**SAENZ v. SANDERS, District Judge, et al.**
No. 12311.

Court of Civil Appeals of Texas.
San Antonio.
June 27, 1951.

G. Woodson Morris, Ronald Smallwood, San Antonio, Bob J. Spann, Corpus Christi, Albert U. Trevino, Sam L. Harrison, San Antonio, for appellant.

Birkhead, Beckmann, Stanard, Vance & Wood, San Antonio, for appellee.

POPE, Justice.

Relator seeks a mandamus under Article 1824, Vernon's Ann.Civ.Stats., compelling the district judge to set his cause of action for trial. Relator instituted suit against respondents Briggs and Killian in the District Court of Bexar County and charged them with causing an explosion resulting in damages to relator's home. Those respondents, after proper notices and process had been issued, questioned relator, in the course of taking a pre-trial deposition, about the names of any persons who had made inspections of the claimed damages and also about their estimates of the extent of the damage. Relator refused to answer those questions and respondents Briggs and Killian then filed and urged a motion before the trial judge stating that relator refused to answer questions on deposition, and prayed for an order of the court compelling relator to complete his deposition so they could prepare their defense. The court conducted a hearing on the motion and, after hearing evidence and arguments, ordered relator to complete the deposition by answering the questions. The order provided that the parties should agree upon a suitable time and place, but in the event they could not agree, that the matter should again be referred to him. The parties agreed upon a date and relator again submitted himself for questioning, but he again declined to answer the same questions previously propounded to him.

The order made by the trial judge at the hearing removed the case from the settings

for the week of April 2, 1951, which was about three days after the hearing. The order provided that the case should be removed from the settings for April 2d, "for another and later setting to be made by the court after such deposition has been completed, and after the defendants have had a reasonable time to make investigation for the preparation of the defense after the completion of such deposition." The second hearing on the deposition was on April 19, 1951, and the next incident in connection with the litigation was the filing of the petition for mandamus. Prior to that filing, nothing was called to the attention of the trial judge relating to relator's further refusal to answer the same questions.

There are two aspects to the order entered by the trial judge. One relates to the validity of his ruling on the evidence sought by deposition in advance of trial, and the other relates to the power of the court to refuse a setting until the deposition is completed. The first problem is a question of evidence and the second is one of judicial power.

■ When a court exceeds its jurisdiction and powers, one may with impunity disobey a void order or decree, and such may be the case where a court disregards claimed testimonial privileges and immunities. Olson v. Biola Co-op. Raisin Growers Ass'n, 33 Cal.2d 664, 204 P.2d 10, 12 A.L.R.2d 112. And it has been held that one who is required by a void order to produce documents may refuse to comply and invoke the supervisory power of the courts for relief. Carlisle v. Bennett, 243 App.Div. 186, 277 N.Y.S. 187. On the other hand, a court which has jurisdiction over the subject matter and the parties and the power to render the particular order or decree, may expect obedience, though the order or decree is irregular, improvident or in error. Ex parte Westbrook, 126 Tex. 1, 84 S.W.2d 700; Ex parte Kimberlin, 126 Tex. 60, 86 S.W.2d 717. The erroneous exercise of a power is redressable by appeal rather than by mandamus. Wright v. Swayne, 104 Tex. 440, 140 S.W. 221; Ewing v. Cohen, 63 Tex. 482; Ex parte Breeding, Tex.Cr.App., 90 S.W. 634; State ex rel. Everglades Cypress Co. v. Smith, 104

Fla. 91, 139 So. 794. But where the claim is made that an order is void, it must be supported by more than has been here presented. The most that is presented by relator is a dogmatic refusal to obey an order without any statement of reason. Relator in the course of examination simply refuse to give testimony. We are not going to presume that the court unconscionably entered a void order. Relator has fallen far short of his burden to show the court entered a void rather than an erroneous order.

■ But, assuming the court was correct in his ruling about the propriety of the evidence, which we do not here pass upon, the problem remains as to whether he exceeded his powers in refusing a trial until the questions were answered. From the documents before us, relator swears that he is and will remain adamant in his refusal to answer the questions in advance of trial, though he has twice submitted himself for deposition, and the trial court, after a hearing, has commanded that he answer. It also appears from respondents' pleadings that the respondent judge intends to secure to Briggs and Killian their right to complete their questioning by refusing to set the case until his order is obeyed. The trial judge by his order effectually held that respondents cannot prepare their defense until the information sought by their questions on the deposition is obtained. No final judgment having been rendered, an appeal is not possible at this time, and only by submitting and answering the questions could relator urge the error on appeal. Should he be compelled to do this? We think he should, and that the trial judge has not usurped powers by demanding obedience to his lawful order.

■ Article 3769b, Vernon's Ann.Civ. Stats., authorizes punishment for contempt for disobedience of a writ commanding the attendance of a party or witness for questioning by deposition. It is silent about punishment for refusal to answer questions, though we entertain no doubt that such power exists independent of statute. After relator first refused to answer, he received an adverse adjudication after hearing. He now stands in peril of contempt proceed-

ings. That situation would exist even though we should hold that the part of the order refusing to set the case is a usurpation of power and void. But we do not think the trial court is limited in the enforcement of his commands to contempt proceedings only. In appropriate instances, he may conditionally stay proceedings. Decauville Automobile Co. v. Metropolitan Bank, 124 App.Div. 478, 108 N.Y.S. 1027, 1033; Matagorda Canal Co. v. Styles, Tex. Civ.App., 207 S.W. 562; 1 C.J.S., Actions, § 134b; 1 C.J., Actions, §§ 416–418. If a plaintiff in the actual trial of his cause takes the witness stand and answers all questions on direct examination and then refuses to answer questions on cross-examination, though the court may elect to proceed by contempt we think he may also declare a mistrial. At a retrial, should the same thing occur, resulting in another mistrial, we think the court very properly could put the party plaintiff to his election of obedience or postponement of a future trial. Relator defiantly stands on his spirit of rebellion toward the court's order and frustrates his adversaries' rights, yet seeks a writ of grace from us. One who seeks the aid of a court must submit himself to all legitimate orders and processes, and we think the court has not exceeded its powers in so controlling the orderly procedure of this case. Skirven v. Skirven, 154 Md. 267, 140 A. 205, 56 A.L.R. 697; Campbell v. Justices of Superior Court, 187 Mass. 509, 73 N.E. 659, 69 L.R.A. 311, 2 Ann.Cas. 462; Whitman v. Kentucky Central Life & Accident Ins. Co., 232 Ky. 173, 22 S.W.2d 593; Kirchner v. Kirchner, 5 N.J.Super. 341, 69 A.2d 30; Travis v. Travis, 89 Cal.App.2d 292, 200 P.2d 843; White v. White, 71 Cal. App.2d 390, 163 P.2d 89; Ross v. Ross, 48 Cal.App.2d 72, 119 P.2d 444; 12 Am. Jur., Contempt, § 71; 27 C.J.S., Discovery, § 86; Rule 167, Texas Rules of Civil Procedure.

The mandamus is refused.

W. O. MURRAY, Chief Justice.

I concur in the opinion written by Associate Justice POPE. We have here a petitioner who advises us in his petition for a writ of mandamus that the trial judge has ordered him to answer certain questions propounded to him by the defendants in an oral deposition, and that he has disobeyed this order of the trial judge and intends to continue to disobey such order. The respondents, who are the defendants below, have alleged and the trial court has found, in effect, that the respondents cannot properly prepare their defense to petitioner's suit until these questions are answered.

Petitioner does not contend that the matter inquired about is a privileged matter, but at most only contends that the trial court ruled incorrectly on a question of evidence in requiring him to answer the questions. We cannot pass upon the correctness of the ruling of the trial court on a matter of evidence, not shown to be privileged, in a mandamus proceeding. 35 Am. Jur. § 258, p. 29; 55 C.J.S., Mandamus, § 87, page 142. Such errors, if any, can be corrected only when properly presented on appeal, and on a mandamus hearing we must presume such ruling of the trial to be correct. 55 C.J.S., Mandamus, § 87, page 142.

Here we have a petitioner who admits that he is the author of his own trouble; that the only reason he cannot secure a trial of his case is that he has refused to obey the solemn order of a trial judge in the very case in which he here seeks relief. All of this in the face of the fact that the respondents have alleged and the trial judge has found that respondents cannot properly prepare their defense until petitioner obeys the order of the trial judge and answers the questions.

What was said in Campbell v. Justices of Superior Court, 187 Mass. 509, 73 N.E. 659, 660, 69 L.R.A. 311, is so appropriate that I here quote: "And it is inconsistent with the petitioner's contention that a plaintiff who has failed to do that which properly is required of him in the case may insist upon a trial as a matter of right. If a plaintiff prays for a decree against his adversary, we are of opinion that the principles stated in the cases first cited should be applied to a request to proceed with the case to a final judgment, as well as to requests for preliminary favors. It is plain that misconduct of a plaintiff that is treated

as a contempt may often be of such a kind as would make it impossible to go on with the case without great injustice to the defendant. * * * In Gordon v. Gordon, 141 Ill. 160–163, 30 N.E. 446, 21 L.R.A. 387, 33 Am.St.Rep. 294, the court said: 'Where a complainant is in contempt, there may be cogent reasons for holding that his proceeding shall be stayed so long as he remains in contempt, under the well-known maxim that he who seeks equity must do equity.' * * * We are of opinion that a plaintiff who is in contempt of court cannot go on with his case against the defendant as a matter of right. In many cases it would be plainly wrong to permit him to do so. It is conceivable that in others his objectionable conduct may be of such a kind, and the circumstances of the case may be such, that the court, in the exercise of its discretion, properly may permit him to go on. In a case like the present the court ought not to issue a writ of mandamus to compel the superior court to proceed with the trial."

Petitioner, while freely admitting that he is defying and disobeying a solemn order of a trial judge not shown to be void, is here seeking a writ of mandamus from this Court to compel that trial judge to proceed to the trial of the action in which the disobedience occurred. That we would grant petitioner a writ of mandamus under such circumstances is unthinkable.

NORVELL, Justice (dissenting).

As to the analysis of this case, I am not in substantial disagreement with the majority. I feel, however, that my associates have failed to properly evaluate the circumstance *that at the time the coercive order here questioned was entered, the plaintiff had not been adjudgd in contempt of court.*

This means that whenever an order of the kind now before us is questioned, this Court upon an application for writ of mandamus must determine whether or not a constitutional immunity or something similar thereto is involved. In other words, we must necessarily decide whether or not the court below acted within its author-

ized jurisdiction in rendering the particular order. 58 Am.Jur. 38, Witnesses, § 29; Robertson v. Virginia, 181 Va. 520, 25 S.E.2d 352, 146 A.L.R. 966; Virginia Electric & Power Co. v. Bowers, 181 Va. 542, 25 S.E.2d 361. My view is that this issue should be determined in contempt proceedings and a party should not be deprived of his privileges as a litigant "until his contempt has been adjudicated rightfully." 17 C.J.S., Contempt, § 97, page 139.

The order of the district judge entered with reference to the completion of the deposition in this case is a drastic and unprecedented one. It provides that "this case be, and the same hereby is removed from the settings of the week of April 2, 1951, *for another and later setting to be made by the court after such deposition has been completed,* and after the defendants have had a reasonable time to make investigation for the preparation of the defense after the completion of such deposition."

In the reply to the application for writ of mandamus, probably prepared by the attorneys in the case but signed and sworn to by the district judge, it is said: "That such order for the completion of the deposition was and is a proper and valid order. That so much of the order as removed the cause from the settings for the next following weeks, April 2, 1951, *was proper for the enforcement of defendants' right to have such deposition given by the opposing party, and that the portion of the order which provided that after removal for that week it should be 'for another and later setting' after completion of the deposition was likewise proper for the enforcement of defendants' right to take such deposition as given him by law,* and the action of removing same from the settings for such purpose was not illegal, unauthorized, arbitrary, capricious or unreasonable, but was within the sound discretion of the court in order to secure to the defendants their right to take the deposition."

This constitutes a bold assertion of the power and authority to employ a stay of proceedings as a sanction to compel the plaintiff to answer questions propounded by

deposition prior to an adjudication of contempt.

It is my opinion that the part of the order providing in effect that the cause shall not be heard nor a setting thereof made until "after such deposition has been completed" is void as being beyond the authority of the court, and that the district judge should be instructed to proceed without reference to this void portion of his order. The part of the order referred to was not entered in accordance with the conceded power of the trial judge to control his docket, but was intended to force the litigant to answer questions under the penalty of having his suit never tried.

A district judge has and should have broad and ample powers to enforce his orders. However, the power to close the doors of the courthouse and refuse to proceed with a judicial hearing is a highly drastic sanction capable of abuse and resulting injustices. While this particular case may not present a question involving constitutional immunities or privileged communications, and the majority opinion does not render this Court impotent to act in such case, it is nevertheless true that "illegitimate and unconstitutional practices get their first footing by silent approaches and slight deviations from legal modes of procedure." 58 Am.Jur. 45, § 37.

Mere force of precedent may often be given a place of disproportionate importance in procedural matters and I do not believe a hundred-year-old method of doing a thing should necessarily be followed today. But a lack of precedent, particularly when it relates to the claimed existence of a broad discretionary governmental power should cause some hesitation and study, for, as pointed out by the Supreme Court in Sweeney v. Jarvis, 6 Tex. 36, a discretion without effective limitation takes the form of an arbitrary as distinguished from a legal discretion, which was characterized by Lord Camden, as "the law of tyrants: always unknown, different in different men; casual; depending upon constitution, temper, passion." 6 Tex. 40.

The particular sanction here invoked by the trial court has no basis in either constitutional or statutory enactment. I find no decision by a Texas appellate court which recognizes that such power exists in a district judge. We have apparently administered justice and maintained a form of juridic order from 1840, when Republic of Texas v. McCulloch, reported in Dallam Dig. 357, was decided, until the present time, without invoking or recognizing the power now asserted. It seems that if it now be necessary to place such power with the district judge, it should be done by a statutory jurisdictional enactment.

Contempt proceedings are effective to secure answers, regardless of whether or not the witnesses be parties or interested in the lawsuit on trial. The procedure employed in this case would be effective only against a plaintiff or some person interested in obtaining a judgment of the court. When contempt proceedings are resorted to, the power, authority and jurisdiction of the court to enter the order may be tested by habeas corpus proceedings. 25 Am.Jur. 212–16, Habeas Corpus, §§ 92–97.

This cause seemingly resolves itself into a question of the nature of the proceedings in which it is to be determined whether an order directing that a particular question be answered is legal or is void as being beyond the jurisdiction of the court. Under the majority opinion, when a stay order is invoked by the trial judge, this issue would be determined by this Court upon application for writ of mandamus, wherein we would necessarily have to decide whether or not a constitutional immunity or something similar thereto was involved.

In my opinion, the better and safer procedure would be to determine these matters in a contempt proceeding where the authority of the court to issue the order might be tested by the writ of habeas corpus. In this way the use of a drastic order which fixes a penalty before violation and determination of guilt may be avoided.

I respectfully dissent.